Katherine Robison (SBN 221556)
kat@zwillgen.com
ZWILLGEN LAW, LLP
915-2 Battery Street, 2d Floor
San Francisco, CA 94111
Telephone: (415) 590-2340
Facsimile:  (415) 445-0908

Attorneys for Defendant
FANDUEL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WESLEY LEUNG, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>FANDUEL, INC., a Delaware Corporation,<br><br>    Defendant. | Case No. 5:15-CV-00835-FMO-JCx<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT FANDUEL, INC. TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          July 2, 2015<br>Time:          10:30 a.m.<br>Courtroom:  22<br>Judge:        Hon. Fernando Olguin |

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on July 2, 2015, at 10:30 a.m., or as soon thereafter as counsel may be heard, by the Honorable Fernando Olguin in Courtroom 22 of the above-captioned court, located at 312 North Spring Street Los Angeles, CA 90012-4701, Defendant FanDuel, Inc. will, and hereby does, move the Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, for an order: (1) compelling Plaintiff Wesley Leung to individually arbitrate his claims against FanDuel pursuant to his written arbitration agreement with FanDuel; (2) dismissing Plaintiff's class and representative claims; and (3) staying the action pending the arbitration of Plaintiff's individual claims.

This petition is made on the ground that Plaintiff entered into a valid and enforceable contract providing that disputes shall be resolved by arbitration in accordance with the Federal Arbitration Act, and on the grounds that the agreement does not authorize Plaintiff to pursue any claims on a representative basis in arbitration or otherwise.

This petition is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Mike Kuchera and exhibits filed concurrently herewith, all papers and pleadings filed by the parties herein, all papers lodged with the Court, and such further evidence and arguments as may be presented at the hearing on this motion.

/ / /

/ / /

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

NOTICE OF MOTION                                                    Case No. 5:15-CV-00835-FMO-JCx

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on April 10, 2015.

**ZWILLGEN LAW LLP**

Dated:  May 5, 2015

By: /s/ Katherine M. Robison
Katherine M. Robison (SBN 221556)
kat@zwillgen.com
ZWILLGEN LAW LLP
915-2 Battery Street, Suite 3
San Francisco, California 94111
Telephone:  (415) 590-2340
Facsimile:  (415) 445-0908

NOTICE OF MOTION                                                    Case No. 5:15-CV-00835-FMO-JCx

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF MOTION ......................................................... 1

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................ 3

    I.    Registering with FanDuel. .................................................................. 3

    II.   The Terms of Use and Arbitration Provision. ......................................... 3

    III.  The Current Action. ........................................................................ 7

ARGUMENT ................................................................................................ 7

    I.    Legal Standard. ............................................................................... 7

    II.   The Arbitration Provision Is Enforceable. ............................................ 8

        A.   Plaintiff's Use of FanDuel's Services Involved Interstate Commerce. .................................................... 9

        B.   The Parties' Agreement to Arbitrate Is Valid Under General Principles of Contract Law. ................................. 10

            1.   The General Principles of New York Contract Law Govern. ...................................................... 10

            2.   The Parties Entered Into an Agreement to Arbitrate. .......................................................... 11

            3.   Plaintiff's Claims Fall Within the Arbitration Agreement. ....................................................... 14

    III.  The Arbitration Provision Mandates Individual, Not Class, Arbitration of Claims. ...................................................... 15

    IV.  This Action Should Be Dismissed, or at the Least Stayed, Pending Resolution of Plaintiff's Individual Arbitration Against FanDuel. ............................................................................. 16

CONCLUSION ............................................................................................ 17

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

MEMORANDUM OF POINTS AND AUTHORITIES        Case No. 5:15-CV-00835-FMO-JCx

# **TABLE OF AUTHORITIES**

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 256 (1995) ..................................................................................... 9

*Am. Libraries Ass'n v. Pataki*,
  969 F. Supp. 160 (S.D.N.Y. 1997) ............................................................... 9

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ............................................................................ 8, 16

*Campos v. Campos Family Farms, LLC*,
  No. 1:12-CV-00598, 2012 WL 2090303 (E.D. Cal. June 8, 2012) ........... 11

*Crawford v. Beachbody, LLC*,
  No. 14cv1583, 2014 WL 6606563 (S.D. Cal. Nov. 4, 2014) ..................... 11

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ..................................................................................... 8

*Express Indus. and Term. Corp. v. New York State Dept. of Transp.*,
  93 N.Y.2d 584 (1999) ................................................................................. 12

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..................................................................................... 9

*Fteja v. Facebook,*
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....................................................... 12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) ....................................................................................... 8

*Han v. Samsung Telecommunications America, LLC*,
  No. CV 13-3823, 2013 WL 7158044 (C.D. Cal. Dec. 16, 2013) .............. 11

*Harris v. Bingham McCutchen LLP*,
  214 Cal. App. 4th 1399 (2013) ................................................................... 10

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

*HG Estate, LLC v. Corporacion Durango S.A. De de C.V.,*
   271 F. Supp. 2d 587 (S.D.N.Y.2003)............................................................................16

*Hines v. Overstock.com, Inc.,*
   380 Fed. Apprx. 22 (2d Cir. 2010)..............................................................................12

*Hoffman v. Citibank (South Dakota), N.A.,*
   546 F.2d 1078 (9th Cir. 2008)............................................................................10, 11

*JLM Indus., Inc. v. Stolt-Nielsen SA,*
   387 F.3d 163 (2d Cir. 2004)........................................................................................15

*Khanna v. American Express Co.,*
   No. 11 CIV. 6245 JSR, 2011 WL 6382603 (S.D.N.Y. Dec 14, 2011) ......................16

*Mehler v. Terminix Int'l Co.,*
   205 F.3d 44 (2d Cir. 2000).................................................................................10, 14

*Milgrim v. Backroads, Inc.,*
   142 F. Supp. 2d 471 (S.D.N.Y. 2001)........................................................................17

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ...............................................................................................8, 14

*Oldroyd v. Elmira Sav. Bank,*
   134 F.3d 72 (2d Cir. 1998)..........................................................................................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
   388 U.S. 395 (1967) .......................................................................................................9

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
   490 U.S. 477 (1989) .......................................................................................................8

*Samaniego v. Empire Today LLC,*
   205 Cal. App. 4th 1138 (2012)...................................................................................11

*Shetiwy v. Midland Credit Management,*
   959 F.Supp.2d 469 (S.D.N.Y. 2013)..........................................................................16

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999).......................................................................................11

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

iii

*Stark v. Gilt Groupe, Inc.*,

    No. 13 CIV. 5497 LLS, 2014 WL 1652225  (S.D.N.Y. Apr. 24, 2014)........ 12, 13, 15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*

    559 U.S. 662 (2010) ............................................................................... 15

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,

    489 U.S. 468 (1989) ............................................................................... 15

*Wash. Mut. Bank, FA v. Superior Court,*

    24 Cal. 4th 906 (2001)........................................................................... 11

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001)............................................................... 10

**OTHER AUTHORITIES**

9 U.S.C. § 1 ..................................................................................................... 9

9 U.S.C. § 2 .................................................................................................. 7, 9

9 U.S.C. § 3 ................................................................................................... 16

9 U.S.C. § 4 .................................................................................................. 2, 8

ZWILLGEN LAW LLP
915.-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00835-FMO-JCx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

## MEMORANDUM IN SUPPORT OF MOTION

Defendant FanDuel, Inc. ("FanDuel") respectfully submits this memorandum of law in support of its motion to compel arbitration of the claims asserted by plaintiff Wesley Leung ("Plaintiff") in his Class Action Complaint ("Complaint").

## PRELIMINARY STATEMENT

Before entering a relationship with FanDuel, Plaintiff agreed that any dispute arising from the parties' relationship would be resolved through arbitration.  Both the FanDuel Terms of Use to which Plaintiff assented and the Arbitration Clause contained therein are plainly enforceable under New York law, Plaintiff's claims fall squarely within the scope of the arbitration clause, and Plaintiff chose not to exercise his right to opt-out of the Arbitration provision.  In direct contravention of their agreement, Plaintiff elected to file his claims as a purported class action in court, rather than initiating individual arbitration in a location convenient for him. Accordingly, this Court should compel Plaintiff to arbitrate his claims against FanDuel in his individual capacity and dismiss this case.

- *Plaintiff assented to a valid and enforceable binding arbitration provision.* FanDuel operates an internet website that allows users to participate in daily fantasy sports contests. In order to participate in FanDuel's contests, all users must first register an account with FanDuel. When Plaintiff clicked the button to register his account with FanDuel, he expressly agreed that FanDuel's Terms of Use would govern his use of FanDuel's service. Those Terms of Use included a

clear and conspicuous binding arbitration provision requiring that all disputes between users and FanDuel not remedied informally be resolved via arbitration before the American Arbitration Association ("AAA"), and not in court. This same provision also made clear that FanDuel and users can only bring actions in their individual capacity, and not as part of a purported class. FanDuel provided an unavoidable notice of these provisions to Plaintiff, including through a bold warning at the top of the Terms of Use page. Finally, FanDuel's Terms of Use gave Plaintiff the option to opt-out of the binding arbitration and class action waiver provisions, but Plaintiff chose not to do so. Thus, a valid arbitration agreement between FanDuel and Plaintiff exists.

- *Plaintiff's claims regarding FanDuel's deposit promotion fall squarely within the arbitration provision*. By its terms, the arbitration provision applies to "[a]ll claims arising out of or relating to the[] Terms [of Use] . . . the parties relationship with each other and/or [users'] use of the Service[s]." Plaintiff's claim – that he believed that he would receive additional credit from FanDuel upon registering – relates both to the parties' relationship and Plaintiff's use of FanDuel's service. As the Supreme Court has made clear, arbitration and class action waiver provisions like those at issue here should be enforced.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00835-FMO-JCx

**BACKGROUND**

## I.     Registering with FanDuel.

FanDuel is a Delaware corporation with headquarters in Manhattan, New York.  Class Action Complaint ("Compl.") ¶ 15. FanDuel offers one-day, Internet-based fantasy sport games on its website, fanduel.com. *Id.* ¶ 2. According to Plaintiff, FanDuel offers its service "throughout all fifty states." *Id.* ¶ 15. All users must create a FanDuel account before they are eligible to play. *Id.* ¶ 2. Plaintiff Wesley Leung created his account on October 13, 2013. (Declaration of Mike Kuchera in Support of FanDuel's Motion to Compel Arbitration ("Decl.") at ¶ 10.)

To register his account, Plaintiff would have first navigated to FanDuel's website, www.fanduel.com to access FanDuel's service. (Decl. ¶ 5.) Then he would have had to click on the "Join Now" or "Join" button on FanDuel's webpage.  (Decl. ¶ 6.) Clicking on this button, Plaintiff would have been presented with a form to fill out.  (Decl. ¶ 7.)  In order to register his account, Plaintiff was required to enter his name, email address, and desired FanDuel username and password into this form, and then click the "Play Now" button. (*Id.*) The registration form includes a link to enter a "promo code" and a prominent notification that states: "By signing up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**." (Decl. ¶ 7 and Ex. 2.) The phrase "Terms of Use" is in bold and hyperlinked to take an individual to FanDuel's Terms of Use at www.fanduel.com/terms. (*Id.*)

## II.    The Terms of Use and Arbitration Provision.

At the time Plaintiff registered his account, FanDuel included the following

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

3

notification at the very top of the page displaying its Terms of Use, before

presenting the individual terms: "IMPORTANT NOTICE: THIS AGREEMENT IS

SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION

RIGHTS AS DETAILED IN SECTION 15." (Ex. 3, Decl. ¶ 9, at 1.) This

notification was followed by the individually titled sections of the Terms of Use.

Section 1 of the Terms of Use was titled "Acceptance of terms." (*Id.* at 1.) It states

that "[b]y accessing the Site or using any part of the Site or any content or services

(as each is defined below) on the Site, you agree to become bound by these terms

and conditions.  If you do not agree to all terms and conditions, then you may not

access the Site or use the content of any services in the Site." (*Id.*) Additional

sections, including "Eligibility," "Game Rules," and "Conduct" followed. The

"Game Rules" section of the Terms of Use included a sub-section on "Bonuses and

Promotions," where FanDuel explained that it "frequently offer[s] bonuses to newly

depositing users and for other marketing purposes.  Pending bonus is converted into

players cash account as the player enters real money contests. . . . " (*Id.* at 6.)

Section 15 of the Terms of Use, titled "Binding Arbitration and class action

waiver," addresses the procedure for resolving potential disputes between FanDuel

and users. Significantly, the preamble to the Section includes the following

statement: "PLEASE READ THIS SECTION CAREFULLY – IT MAY

SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR

RIGHT TO FILE A LAWSUIT IN COURT." (Ex. 3, Decl. ¶ 9, at 11.) In a

subsection titled "Initial Dispute Resolution," FanDuel and users agree that they

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

4

"shall use their best efforts  . . . to settle any dispute, claim, question, or disagreement" and participate in "good faith" negotiations, as a condition to initiating a lawsuit or arbitration. Plaintiff did not initiate such informal dispute resolution nor did he seek good faith negotiations with FanDuel regarding his claims. (Decl. ¶ 11.)

The arbitration provision requires that "either party may initiate binding arbitration as the sole means to resolve claims" thirty (30) days after filing an informal dispute under the Initial Dispute Resolution provision and failing to agree to a solution. (Ex. 3, Decl. ¶ 9, at 11.) This binding individual arbitration is to be administered by the AAA in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer related disputes, excluding any rules or procedures governing or permitting class actions. (*Id.*) For United States citizens like Plaintiff, the Terms of Use state that the "arbitration will take place at any reasonable location within the United States convenient for you," with "you" referring to the user. (*Id.* at 12.) FanDuel also agrees to pay all of the actual filing and arbitrator fees for claims not exceeding $75,000. (*Id.* at 11.)

With respect to scope, the mandatory arbitration provision explains that it applies to "all claims arising out of or relating to this Agreement (including its formation, performance and breach), the parties' relationship with each other and/or [users'] use of the Site." (Ex. 3, Decl. ¶ 9, at 11.) It then enumerates several limited exceptions for actions relating to intellectual property rights such as patents, copyrights, and trade secrets. (*Id.* at 12.) Section 15 also states that "[e]ither party

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

5

may also seek relief in a small claims court for disputes or claims within the scope of that court's jurisdiction." (*Id.*)

Section 15 of FanDuel's Terms of Use also includes a provision limiting the ability of users and FanDuel to assert or participate in class action lawsuits. Specifically, Section 15 states that users and FanDuel "agree that any arbitration shall be conducted in their individual capacities only and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis." (Ex. 3, Decl. ¶ 9, at 12.) Then, in all capital letters the terms state that "YOU AND FANDUEL AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (*Id.*)

Under a sub-heading "30-Day Right to Opt Out," Section 15 notified Plaintiff that he "ha[s] the right to opt-out and not be bound by the arbitration and class action waiver provisions." (Ex. 3, Decl. ¶ 9, at 12.) It also explains exactly how to accomplish such an opt-out—by sending written notice to the address provided by FanDuel. (*Id.*) The terms went on to explain that the opt-out must be sent within 30 days of the user's first use of the service. Here, Plaintiff never sent an opt-out notice to FanDuel. (Decl. ¶ 12.) Plaintiff's 30-day period ended on November 12, 2013.

Section 15 also includes a contractual choice of law provision, which states: "[t]he Terms and the relationship between you and FanDuel shall be governed by the laws of the State of New York without regard to conflict of law provisions." (Ex.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

3, Decl. ¶ 9, at 12.)

## III.    The Current Action.

On March 13, 2015, Plaintiff filed a Class Action Complaint in the Superior Court of California, County of San Bernardino. (Decl. ¶ 13.) Plaintiff served his complaint on FanDuel's agent for service on March 30, 2015. (*Id*.) Plaintiff alleges five causes of action. The first and second causes of action are for false and misleading advertising in violation of California Business & Professional Code Sections 17200, *et. seq*. (Unfair Competition Law) and 17500, *et. seq*. (False Advertising Law), respectively. The third cause of action is for violation of the California Consumer Legal Remedies Act, California Civil Code Section 1750, *et. seq*. The fourth cause of action is plead under New York's version of the California UCL and FAL, New York Business Code Sections 349 (deceptive acts and practices) and 350 (false advertising). And the fifth cause of action is for breach of contract. Plaintiff seeks various forms of relief, including damages and injunctive relief and seek to represent a class of California consumers.

## ARGUMENT

## I.    LEGAL STANDARD.

Section 2 of the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 2, provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The Act embodies the "liberal federal policy favoring arbitration" as an alternative dispute resolution mechanism and the "fundamental principle that

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 480-81 (1989); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA, by its terms "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Where one party fails, neglects, or refuses to arbitrate under a written agreement for arbitration, the other party "may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Importantly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24. And the party seeking to avoid arbitration has the burden of showing that the arbitration provision is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## II.    The Arbitration Provision Is Enforceable.

Courts should compel arbitration as long as the arbitration agreement is (1) part of a contract or transaction involving interstate commerce, and (2) valid

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

under general principles of contract law. 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 256, 281 (1995); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The agreement between Plaintiff and FanDuel satisfies both requirements.

### A. Plaintiff's Use of FanDuel's Services Involved Interstate Commerce.

Plaintiff's use of FanDuel's internet website to participate in daily fantasy games involves interstate commerce. The FAA defines "commerce" as "commerce among the several States or with foreign nations …." 9 U.S.C. § 1. As the Supreme Court has explained, Congress intended the FAA to apply to the farthest reach of the Commerce Clause, to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos.*, 513 U.S. at 277; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).

There can be little dispute that Plaintiff's claims here involve interstate commerce. Indeed, Plaintiff himself alleges that FanDuel offers its services through its internet site throughout all fifty states. Compl. ¶ 15. And Plaintiff seeks to represent a class of persons who purchased a fantasy product in California from FanDuel in New York. *Id.* ¶¶ 15, 22. Moreover, courts have long recognized the "inescapable conclusion" that the Internet is an instrument of interstate commerce. *See, e.g., Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 173 (S.D.N.Y. 1997) (noting that the Internet "is wholly insensitive to geographic distinctions" and that "[i]n almost every case, users of the Internet neither know nor care about the

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

physical location of the Internet resources they access.").

## B. The Parties' Agreement to Arbitrate Is Valid Under General Principles of Contract Law.

### 1. The general Principles of New York Contract Law Govern.

To determine whether the parties in fact have agreed to arbitrate, courts generally look to state contract law. *See Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 48 (2d Cir. 2000) (citing *First Optionsof Chicago, Inc.*, 514 U.S. at 944). The Terms of Use include a choice of law provision specifying that New York law applies to "[t]he terms" and "the relationship between" the parties. And the arbitration provision is a term of the parties' agreement. As the forum state, California's rules govern the threshold determination of whether the choice of law provision in FanDuel's Terms of Use should be given effect. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) ("Federal courts sitting in diversity use the choice-of-law rules of the forum state . . . to make a choice-of-law determination."). California law dictates enforcement of FanDuel's choice of law provision.

"California strongly favors enforcement of choice-of-law provisions, and its courts have upheld application of other states' internal statutes, rules and laws to arbitration contracts." *Harris v. Bingham McCutchen LLP,* 214 Cal. App. 4th 1399, 1404 (2013); *see also Hoffman v. Citibank (South Dakota), N.A.*, 546 F.2d 1078, 1082 (9th Cir. 2008) (stating that the key inquiry is "whether the chosen state's law is contrary to a fundamental policy of California"). Choice-of-law provisions, including those contained in consumer contracts, are generally respected unless the

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

party seeking to avoid the provision can show that failure to apply California law would result in "substantial injustice." *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1148 (2012); *Wash. Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 915–16 (2001); *Hoffman*  546 F.3d at 1082. Where the arbitration provision would be equally enforceable under California law, failing to apply California law cannot result in substantial injustice. *See, e.g., Han v. Samsung Telecommunications America, LLC*, No. CV 13-3823, 2013 WL 7158044, at *7 (C.D. Cal. Dec. 16, 2013) (finding enforcement of contractual choice of law provision calling for Texas law especially appropriate where "California law itself would also arguably permit enforcement of the arbitration clause here"). Here, since the arbitration provision is equally enforceable under California and New York law,[1] Plaintiff will not suffer any "substantial injustice" if New York law applies.

## 2.  The Parties Entered Into an Agreement to Arbitrate.

Under New York law, contracts are created when the parties demonstrate mutual assent to all material terms. *Express Indus. and Term. Corp. v. New York State Dept. of Transp.*, 93 N.Y. 2d 584, 589 (1999). This principle extends to

---

[1] In deciding whether to enforce an arbitration provision, California court are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). The agreement here meets both requirements.  *See, e.g*., *Crawford v. Beachbody, LLC*, No. 14cv1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 4, 2014) (plaintiff bound by terms where she was required to click box to "Place Order" immediately above language "By clicking *Place Order* below, you are agreeing that you have read and understand the [Terms and Conditions]"); *Campos v. Campos Family Farms, LLC*, No. 1:12-CV-00598, 2012 WL 2090303, at *10 (E.D. Cal. June 8, 2012) (arbitration agreement covering "any and all disputes" over "terms and implementation" of agreement covered claims even though plead as trademark infringement, unfair competition, interference with economic advantage, fraud, and breach of fiduciary duty).

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00835-FMO-JCx

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

agreements made over the internet, where "binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Stark v. Gilt Groupe, Inc*., No. 13 CIV. 5497 LLS, 2014 WL 1652225, slip op. at *2 (S.D.N.Y. Apr. 24, 2014) (applying New York contract law in the context of agreements made over the internet) (citing *Hines v. Overstock.com, Inc*., 380 Fed. Apprx. 22, 25 (2d Cir. 2010) (applying New York contract law to online Terms and Conditions)).

Here, Plaintiff meets these criteria. To register an account with FanDuel, plaintiff filled out a form and clicked "Play Now." Immediately below where plaintiff clicked, he was informed by conspicuous text that "[b]y signing up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**." The phrase "Terms of Use" is in bold and links directly to FanDuel's full Terms of Use, which makes clear to a prospective user, in multiple locations, that he is agreeing to arbitrate any disputes he might have with FanDuel. This affirmative action – clicking on the "Play Now" button – is sufficient to demonstrate express consent.

Numerous courts applying New York Law have found contractual assent in similar situations. For example, in *Fteja v. Facebook,* 841 F. Supp. 2d 829 (S.D.N.Y. 2012), the plaintiff opposed Facebook's invocation of the forum selection clause in its terms of use on the ground that there was no proof he agreed to those terms. *Id.* at 834. Facebook countered that a potential user "cannot become an actual Facebook user unless and until they have clicked through the registration page

12

ZWILLGEN LAW LLP
915 -2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

where they acknowledge they have read and agreed to Facebook's terms of use. *Id.* Specifically, Facebook explained that to sign up for Facebook, prospective users had to click a "Sign Up" button "immediately below" which the following sentence appeared: "By clicking Sign-Up, you are indicating that you have read and agree to the Terms of Service." *Id.* at 835. The phrase "Terms of Service" was underlined and hyperlinked to the webpage with the full Terms of Service. *Id.* The court found this sufficient to demonstrate assent, reasoning that plaintiff "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough." *Id.* at 840.

Likewise, in *Stark v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014), plaintiff opposed defendant Gilt Group's invocation of a mandatory arbitration provision on the ground that he allegedly "never effectively agreed to it." *Id.* at *2. Gilt's sign-up process involved a sign up box featuring a "Shop Now" button accompanied by statements that "consumer will become a Gilt member and agrees to be bound by the Terms of Membership" and "By joining Gilt through email or Facebook signup, you agree to the Terms of Membership for all Gilt Group Sites." *Id.* at *1. According to the court, within that sign-up box, one mouse-click brought users to Gilt's full terms and conditions. The court found this sufficient for assent. Specifically, the court explained that when plaintiff "clicked 'Shop Now' he was informed that by doing so, and giving his email address, you agree to the Terms of Membership." *Id.* at *3. And that regardless of whether he actually read the contract terms "[plaintiff] was directed

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

13

exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them." *Id.*

So too here. Plaintiff clicked the "Play Now" button after being informed that by doing so he was consenting to the terms, which he was directed to via hyperlink. This is sufficient to bind him to those terms.

### 3.  Plaintiff's Claims Fall Within the Arbitration Agreement.

Plaintiff's claims against FanDuel fall within the broad arbitration provision in FanDuel's Terms of Use. The arbitration provision applies to "all claims arising out of or relating to this Agreement (including its formation, performance and breach), the parties' relationship with each other and/or [users'] use of the Site." (Ex. 3, Decl. ¶ 9, at 11.)  It is well settled that a broad arbitration provision such as this one requires arbitration of "[a]ny dispute, controversy or claim arising under or in connection with" the contract, and "justifies a presumption of arbitrability." *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998); *see also Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000) ("Any controversy or claim between [the parties] arising out of or relating to" the contract is a broad arbitration clause). And that any questions about the clause "should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiff's claims arise out of and relate to his use of FanDuel's service since they stem from Plaintiff registering with FanDuel and making an initial deposit in order to play the fantasy contests FanDuel offers. Moreover, promotions, including

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

14

the deposit match or bonus promotion Plaintiff complains about, are specifically referred to in Section 5 of FanDuel's terms of use. As such, Plaintiff's claims fall squarely within the arbitration provision. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) ("We have said that [i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them."); *see also Stark*, 2014 WL 1652225, at *1 (ordering arbitration of claims for deceptive business practices and false advertising stemming from online retailer Gilt's claims that certain products were made of Bamboo fiber).

### III.   The Arbitration Provision Mandates Individual, Not Class, Arbitration of Claims.

This Court should also order arbitration on an individual, not a class basis. The FAA's primary purpose is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Parties can agree which issues to arbitrate, who will arbitrate them, and with whom they arbitrate their disputes. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49 (2011). "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 559 U.S. 662, 683 (2010) (emphasis in original). Conversely, courts should compel the parties to individual arbitration where an enforceable arbitration provision requires

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

15

the parties to arbitrate in their individual capacity. *AT&T Mobility LLC*, 131 S. Ct. at 1753 (finding California Supreme Court's decision in *Discover Bank v. Superior Court*, which created a rule allowing class action waivers in arbitration provisions to be found unconscionable, is preempted by FAA); *see also Shetiwy v. Midland Credit Management*, 959 F.Supp.2d 469, 475-76 (S.D.N.Y. 2013); *Khanna v. American Express Co.*, No. 11 CIV. 6245 JSR, 2011 WL 6382603, at *4 (S.D.N.Y. Dec 14, 2011).

Here, the arbitration provision in FanDuel's Terms of Service requires the parties to arbitrate in their individual capacity, not on a class basis. Plaintiff agreed to this provision and did not opt out of it despite the opportunity to do so. Thus, the court should enforce the provision and compel Plaintiff to arbitrate his disputes in his individual capacity with FanDuel.

## IV.   This Action Should Be Dismissed, or at the Least Stayed, Pending Resolution of Plaintiff's Individual Arbitration Against FanDuel.

When ordering arbitration, courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Where, like in the instant case, the issues in the case are properly subject to arbitration, the Court must order a stay. *HG Estate, LLC v. Corporacion Durango S.A. De de C.V.,* 271 F. Supp. 2d 587, 596 (S.D.N.Y.2003) (noting that Section 3 of the FAA mandates a stay of litigation if the issue involved is subject to arbitration). This Court may also exercise its discretion to dismiss the action in its entirety. *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471,

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

16

476 (S.D.N.Y. 2001) ("Although Section 3 of the FAA requires a federal court to stay an action to resolve a dispute subject to an arbitration agreement, courts have the discretion to dismiss rather than stay an action when all of the issues in it must be arbitrated.").

FanDuel therefore respectfully requests that, in addition to compelling individual arbitration of Plaintiff's claims against it, the Court dismiss this action in its entirety. Alternatively, the Court should issue a stay of this matter pending the completion of such arbitration.

### CONCLUSION

When Plaintiff registered with FanDuel, he agreed to FanDuel's Terms of Use. That agreement clearly and unambiguously requires him to submit claims arising out of his use of FanDuel, including claims of the type at issue here, to arbitration on an individual basis. The FAA and binding precedent require enforcement of such clear and unambiguous agreements to arbitrate. Accordingly, FanDuel respectfully requests that the Court order arbitration on an individual basis as the parties agreed and dismiss this action in its entirety. In the alternative, FanDuel respectfully requests that the Court compel Plaintiff to arbitrate his claims on an individual basis and stay this action pending such arbitration.

///

///

///

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

1

2

**ZWILLGEN LAW LLP**

3

Dated:  May 5, 2015

4

By: /s/ Katherine M. Robison

Katherine M. Robison (SBN 221556)

5

kat@zwillgen.com

ZWILLGEN LAW LLP

6

915-2 Battery Street, Suite 3

7

San Francisco, California 94111

Telephone:  (415) 590-2340

8

Facsimile:  (415) 445-0908

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00835-FMO-JCx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2015, I authorized the electronic filing of the foregoing documents, **NOTICE OF MOTION AND MOTION BY DEFENDANT FANDUEL, INC. TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**, with the Clerk of the Court using the CM/ECF system to be served on the parties by electronic transmission.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 5, 2015.


ZWILLGEN LAW LLP


By: /s/ Katherine M. Robison
    Katherine M. Robison (SBN 221556)
    ZWILLGEN LAW LLP
    915-2 Battery Street, Suite 3
    San Francisco, California 94111
    Telephone:  (415) 590-2340
    Facsimile:  (415) 445-0908
    kat@zwillgen.com

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 5:15-CV-00835-FMO-JCx