Katherine Robison (SBN 221556)
kat@zwillgen.com
ZWILLGEN LAW, LLP
915-2 Battery Street, 2d Floor
San Francisco, CA 94111
Telephone: (415) 590-2340
Facsimile: (415) 445-0908

Attorneys for Defendant
FANDUEL, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

WESLEY LEUNG, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

FANDUEL, INC., a Delaware Corporation,

Defendant.

Case No. 5:15-CV-00835-FMO-JCx

**DEFENDANT FANDUEL, INC.'s REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: July 2, 2015
Time: 10:30 a.m.
Courtroom: 22
Judge: Hon. Fernando Olguin

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The Terms are Binding. ........ 3

1. Courts Routinely Enforce Terms that Have Been Reasonably Communicated to Users, Like the FanDuel Terms Here. ........ 3

2. A Reasonably Prudent Consumer Would Be Put on Notice of the Terms to Which He Was Consenting During Registration. ........ 5

B. Plaintiff's Cases are Distinguishable. ........ 10

III. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## CASES

*5381 Partners LLC v. Shareasale.com, Inc.*,
No. 12-CV-4263, 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ....................4

*Berkson v. Gogo Inc.*,
No. 14-CV-1199, 2015 WL 1600755 (E.D.N.Y. Apr. 9, 2015) ....................12, 13

*Crawford v. Beachbody, LLC,*
No. 14cv1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ....................4

*Friedman v. Guthy-Renker LLC,*
No. 2:14-cv-06009, 2015 WL 857800 (C.D. Cal. Feb. 27, 2015) ....................7

*Fteja v. Facebook,*
841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................... *passim*

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd* 380 F. App'x 22 (2d Cir. 2010) ....................11

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (2014) .................... *passim*

*Savetsky v. Pre-Paid Legal Services, Inc.*,
No. 14003514, 2015 WL 604767 (N.D. Cal. Feb. 12, 2015) ....................8

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) ....................3

*Sgouros v. TransUnion Corp.*,
No. 14 C 1850, 2015 WL 507584 (N.D. Ill. Feb. 5, 2015) ....................7

*Specht v. Netscape Communications Corp.*,
205 F.3d 17 (2d Cir. 2002) ....................2, 11

*Stark v. Gilt Groupe, Inc.*,
No. 13 CIV.5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ....................10

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ........ 5, 9

*Zaltz v. JDate*,
952 F. Supp. 2d 439 (E.D.N.Y. 2013) ........ 6

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

Defendant FanDuel, Inc. respectfully submits this reply in support of its Motion to Compel Arbitration.

## I. INTRODUCTION

If the clear and conspicuous notice of the arbitration provision in this case is determined not to be sufficient, then no provision would be. Contrary to Plaintiff's assertion, the arbitration provision is not "buried deep in [FanDuel's] terms." (Opposition at 11). Instead, the very first thing a user sees when viewing the Terms of Use ("Terms") is a notification in all caps calling that user's attention to the provision:

FanDuel Join Login

Terms of Use

IMPORTANT NOTICE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN SECTION 15

The following Terms of Use outline your obligations when using the FanDuel website. You can also review our Privacy Policy, which outlines our obligations and practices towards handling any personal information that you may provide to us.

(Declaration of Mike Kuchera in Support of FanDuel's Motion to Compel Arbitration ("Decl."), ¶ 9, Ex. 3, at 1.)

These Terms were likewise brought to the user's attention in an unavoidable way. Users cannot use FanDuel without registering for an account and assenting to the Terms. Users must affirmatively click "Play Now" to register – which appears directly above the admonition: "By signing up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**." (Decl. ¶ 7 & Ex. 2.) Users do not need

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

to scroll down to see this admonition (as in *Specht v. Netscape Communications Corp*.) or come to the conclusion that visiting the website binds them the terms hyperlinked on the bottom of the webpage (as in *Nguyen v. Barnes & Noble Inc*.). Instead, the Terms are accessible through a bold hyperlink within an unambiguous admonition regarding their binding effect, located directly below the registration button that users must affirmatively click to complete their registration:



(Decl. ¶ 7, Ex. 2.) Courts routinely enforce online terms presented in this manner, and this Court should do so here.

Plaintiff seems to concede that if the registration button had said "Sign Up"

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

instead of "Play Now" the Terms would be enforceable. (Opposition at 9.) Plaintiff's argument therefore comes down to the simple proposition that in the absence of the words "Sign Up" on the registration button itself (as opposed to beneath it) the Terms are unenforceable. But this is not the law. The words used on the registration button are not determinative. What is determinative is the unavoidable nature of the disclosure that the Terms apply, and the conspicuous warning about the arbitration provision in the Terms. Given these circumstances, the Court should enforce the arbitration provision.

## II. ARGUMENT

### A. The Terms are Binding.

#### 1. Courts Routinely Enforce Terms that Have Been Reasonably Communicated to Users, Like the FanDuel Terms Here.

The bulk of Plaintiff's argument relies on mischaracterizing the FanDuel Terms as a browsewrap agreement and inaccurately describing the way the Terms were presented to users. Both the "browsewrap" label and Plaintiff's description of the sign up process are incorrect. A browsewrap agreement exists where "website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen" and a user is bound simply "by visiting the website—something that the user has already done." *Fteja v. Facebook*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012). By contrast, a clickwrap agreement requires a user to take some affirmative action to agree – such as clicking a button – before being given access to the product. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 129 n. 18 (2d Cir. 2012) (explaining

the difference between clickwrap and browsewrap agreements).

Although labels and terminology are not determinative of enforceability in any case,[1] the fact that Plaintiff was required to affirmatively consent to the Terms as a condition of using the website establishes a valid clickwrap agreement. When a user must affirmatively click to agree before accessing the website – as FanDuel users do – courts have routinely enforced the terms of those agreements. *Crawford v. Beachbody, LLC*, No. 14cv1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (binding plaintiff to terms where, to complete purchase, plaintiff had to click "PLACE ORDER" button, immediately above which was the language "By clicking Place Order below, you are agreeing that you have read and understand the [hyperlinked] Beachbody Purchase Terms and Conditions, and [hyperlinked] Team Beachbody Terms and Conditions"); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-CV-4263, 2013 WL 5328324 at *7 (E.D.N.Y. Sept. 23, 2013) (binding plaintiff to Merchant Agreement where agreement was accessible by hyperlink on same screen as admonition that "By clicking and making a request to Activate, you agree to the terms and conditions in the [hyperlinked] Merchant Agreement"); *Fteja*, 841 F. Supp. 2d at 838 (binding plaintiff to the terms where users had to click a "Sign Up" button immediately above the admonition "By clicking Sign-Up, you are indicating that you have read and agree to the [hyperlinked] Terms of Service"); *Swift v. Zynga Game*

[1] Importantly, even "browsewrap" agreements that do not require an assenting click are enforceable where the circumstances indicated that website users "must have had actual or constructive notice of the site's terms," such as where the hyperlink to the terms would be apparent to the average user. *Fteja*, 841 F. Supp. 2d at 836.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

*Network, Inc*., 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (enforcing terms, including arbitration provision, where user required to click "Allow" button above language:"[b]y proceeding, you are allowing YoVille to access your information and you are agreeing to the [hyperlink] Facebook Terms of Service in your use of YoVille. By using YoVille, you also agree to the YoVille [hyperlink] Terms of Service").[2]

More important than labels is the reasoning behind upholding such agreements. As the court found in *Fteja*, because plaintiff was "***informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences***," Facebook's Terms of Use were "***reasonably communicated***" to plaintiff. 841 F. Supp. 2d at 840 (emphasis added). In such circumstances, ***"'[a] reasonably prudent offeree would have noticed the link and reviewed the terms before clicking on the acknowledgement icon***.'" *Id*. at 841 (emphasis added). The same is true here.

**2. A Reasonably Prudent Consumer Would Be Put on Notice of the Terms to Which He Was Consenting During Registration.**

Plaintiff claims he should not be bound to the Terms, in part, because he reportedly did not notice them – but his ignorance is not determinative. As displayed above, the presentation of the Terms and the language contained therein would be sufficient to alert a reasonably prudent consumer of the existence of the Terms of Use and the binding nature of the arbitration clause contained therein. *See, e.g., Zaltz v.*

[2] Since Plaintiff does not engage in the choice of law analysis and instead states that there is no fundamental difference between New York and California law, law from both jurisdictions is cited herein.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

*JDate*, 952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013) ("The fact that plaintiff cannot remember the terms that she was presented with when she joined, or that she simply does not believe that she agreed to suit in California, does not negate the uncontroverted and overwhelming evidence demonstrating that plaintiff could not have become a member of JDate.com without first agreeing to the website's Terms of Service."). The determinative standard is whether a reasonably prudent consumer would be put on notice of the terms. *See, e.g.*, *Fteja*, 841 F. Supp. 2d at 841; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (2014). Here, given the clear language of the admonition that registration binds users to the Terms and the provision of a hyperlink to the Terms within that admonition, a reasonably prudent consumer would understand that he was bound by the Terms and understand where those Terms could be accessed.[3] An alternative conclusion – that a reasonably prudent consumer would expect to deposit funds with a website with no Terms of service covering their money or use of the product, despite boldface language pointing them to such Terms – would be entirely unreasonable.

Given the language excerpted above, FanDuel users are unambiguously notified

[3] Plaintiff's brief continually mischaracterizes the information FanDuel makes available to consumers, not only about its Terms, but about the Deposit Match promotion itself. As will be made clear in arbitration in this matter, FanDuel did in fact inform consumers exactly how the deposit match promotion worked, devoting an entire FAQ to explain the very thing that Plaintiff claims was intentionally obscured. See http://www.fanduel.com/pending-bonus ("**Gradually releasing bonuses as you play prevents fraud and discourages multi-accounting. Deposit bonus is released as real cash at a rate of 4% of the entry fee of the contest you enter**.")

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

that signing up binds them to the Terms. Contrast this with the case on which Plaintiff relies, *Friedman v. Guthy-Renker LLC*, No. 2:14-cv-06009, 2015 WL 857800, at *4 (C.D. Cal. Feb. 27, 2015), where the court found that the meaning of checking the box "Agree to Terms" was ambiguous when the box appeared under the text "By checking this box you are electronically signing your order and authorizing us to charge payments against credit card provided above" and the hyperlinked terms was one of many "Helpful Links" set out separately at the bottom of the page. Tellingly, the court noted that the revised website, where the check box read "Agree to [hyperlinked] Terms and Conditions," was sufficient to bind users. *Id*. at *6. The revised page in *Friedman* is akin to the FanDuel page here.

Similarly, in *Sgouros v. TransUnion Corp*., No. 14 C 1850, 2015 WL 507584, *6 (N.D. Ill. Feb. 5, 2015), the court found there was no valid clickwrap agreement even though terms were displayed in a scrollable text window because the following language (between that window and the "I Accept" button) created ambiguity regarding what the user was clicking their agreement to: "You understand that by clicking the "I Accept & Continue to Step 3" button below, you are providing "written instructions" to TransUnion Interactive, Inc. authorizing TransUnion Interactive, Inc. to obtain information from your personal credit profile from Experian, Equifax and/or TransUnion. You authorize TransUnion Interactive, Inc. to obtain such information solely to confirm your identity and display your credit data to you." Given this language, the court found that while users may have had notice of the existence of the terms, they did not have sufficient notice that clicking "I Accept" constituted assent to

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

those terms. *Id*. at *7.

Here, at sign-up, all FanDuel users are provided with a readily-accessible hyperlink that takes them to the Terms with a single click. This makes the present case entirely unlike the additional case Plaintiff relies on, *Savetsky v. Pre-Paid Legal Services, Inc*., No. 14003514, 2015 WL 604767, at *4 (N.D. Cal. Feb. 12, 2015), where the terms were only accessible by navigating through several non-linear pages during the check-out process. In *Savetsky* after the user clicked "Buy Now" and entered their state of residence, they were presented with a page containing three options. Each option included a list of several links including (under the list for "Plan Details") a link to "More Plan Details." Only if the user clicked that link, would they get to a page with another link to the "member contract," which final link provided access to the contract containing the arbitration provision. Given these multiple steps, the court concluded that the user was not put on inquiry notice of the contract or its terms through the sign up process. *Id*. at *4. Those facts are a far cry from the situation here, where users were presented with a single link to the Terms on the self-contained sign-up page.

While Plaintiff takes issue with the lack of color (ignoring the bold-face black text pointing to the Terms) and the lack of underlining of the hyperlink (Opposition at 9), these facts are not determinative. Plaintiff cites no case (and FanDuel is not aware of any) finding that a hyperlink must be a particular color or font to put users on inquiry notice of the terms. FanDuel's hyperlink is bold and contained within the sentence "By signing up, you confirm that you are at least 18 years of age and agree

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

to the **Terms of Use**." (Decl. ¶ 7 and Ex. 2.) This would indicate to a reasonable person that terms apply to their relationship with FanDuel and indicate that they should click the link to find out more.[4] This is what a reasonable consumer seeking to deposit money with a website would expect. And this is all that is required. *Fteja*, 841 F. Supp. 2d at 841.

Nor is it determinative that FanDuel chose to put "Play Now" on its registration button while stating that "By signing up" users agree to the Terms (as opposed to "By clicking 'Play Now'" as Plaintiff prefer, Opposition at 9). In *Swift*, the registration button labelled "Allow" proceeded language in smaller grey font stating: "By proceeding, you are allowing YoVille to access your information and you are agreeing to the [hyperlink] Facebook Terms of Service in your use of YoVille. By using YoVille, you also agree to the YoVille [hyperlink] Terms of Service." 805 F. Supp. 2d at 908. According to Plaintiff, using "Allow" on the registration button instead of "Agree" would not be sufficient. But not only did the court find the process sufficient to bind Zynga users, the word used on the registration button was not determinative or even noteworthy. *Id*. at 911 (noting that "Cases addressing modified clickwrap presentations more similar to the one at issue here, where a plaintiff was provided notice and an opportunity to review terms of service prior to acceptance, have held

[4] If a user does click this link they are taken to the Terms that state prominently on the top: "IMPORTANT NOTICE: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN SECTION 15." (Ex. 3, Decl. ¶ 9, at 1.) Contrary to Plaintiff's assertion, therefore, notice of the arbitration provision is not buried in the Terms. Instead, it is the *very first thing* users are notified of upon viewing them.

them sufficient to put a plaintiff on notice of the terms to which she was assenting"); *see also Stark v. Gilt Groupe, Inc*., No. 13 CIV.5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) (finding plaintiff bound by terms when clicking "Shop Now" button accompanied by admonition that "consumer will become a Gilt member and agrees to be bound by the Terms of Membership"). The exact words used on the registration button are not determinative. What is determinative is that a reasonably prudent consumer would understand that the FanDuel registration process bound them to the Terms.

**B. Plaintiff's Cases are Distinguishable.**

Plaintiff relies heavily on cases that do not involve the type of unavoidable and clear notice given by FanDuel. Plaintiff relies on *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171 (2014), but that case involved a browsewrap agreement and is easily distinguishable from the facts here. In *Nguyen*, Barnes & Noble presented their terms as a hyperlink on the bottom left-hand corner of their webpages. The terms were not displayed at check out and users were not required to agree to those terms before completing their purchase on the website. The *Nguyen* court held that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website ***but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent***, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id*. at 1179 (emphasis added). This is not the situation here – Plaintiff was required to affirmatively consent to the Terms as a condition to

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

completing his registration. The hyperlinked Terms were presented during the registration process as well as on each page of FanDuel's website. Plaintiff's attempt to fit this case within the reasoning of *Nguyen* simply fails.

Plaintiff relies on two other cases – *Specht v. Netscape Communications Corp*., 205 F.3d 17 (2d Cir. 2002) and *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd* 380 F. App'x 22 (2d Cir. 2010) – that are similar to *Nguyen* and likewise distinguishable. In *Specht*, the court would not enforce the software license agreement where the sole reference to that agreement could only have been seen by plaintiffs if they had scrolled down to the bottom of the screen before commencing the download of the product. 205 F.3d at 23. The *Specht* court noted that the admonition to "review and agree to the terms of the ... *software license agreement* before downloading and using the software" was not near the button users clicked to download the software. A "reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." *Id*. at 32. This is not the case here, where the registration page is a single screen and the hyperlinked Terms are referenced directly under the registration link.

In *Hines*, the court found that plaintiff "lacked notice of the Terms and Conditions because the website did not prompt her to review [them] *and* because the link to [them] was not prominently displayed so as to provide reasonable notice of the Terms and Conditions." 669 F. Supp. 2d at 367. Importantly, defendant did not show how or why users would have notice of the terms when using the website –

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

instead simply asserting that "by accessing Overstock's website, an individual accepts Overstock's Terms and Conditions" – or submit any evidence to rebut plaintiff's assertion that she "could not even see the link to [the Terms and Conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase." *Id*. In these circumstances the terms were not binding on plaintiff.

These cases are not like the facts here, where FanDuel users are required to agree to the Terms as a condition of opening an account. As even the *Nguyen* court recognized, courts will enforce a browsewrap agreement if (a) the consumer had actual notice of the agreement or (b) "where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website." *Id.* at 1176. That latter is the case here: users are unambiguously informed that clicking to register a FanDuel account is an acceptance of the Terms and they are required to agree to those Terms to complete their registration.

Plaintiff also relies on a New York case, *Berkson v. Gogo Inc*., No. 14-CV-1199, 2015 WL 1600755 (E.D.N.Y. Apr. 9, 2015), which is currently on appeal to the Second Circuit (Case No. 15-1407), and should not be found determinative here. The issue in *Berkson* was whether users had adequate notice that signing up for a one-month subscription for in-flight Wi-Fi bound them to an automatically-renewing continuous service with Gogo. *Id*. at *1. The court found that there was insufficient evidence that plaintiffs knew they were binding themselves to "more than a one-time offer of service in exchange for money" because Gogo did not draw consumers'

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

attention to the automatic payment renewal policy, the venue provision, or the arbitration clause at issue. *Id*. at *34-35. The court did review past law in the area and concluded, contrary to the weight of authority (see above), that users should not be bound to the hyperlinked terms of use (appearing on different sign-in screens under either a "Sign In" or "Next" button) because those terms were not sufficiently prominent. *Id*. While the conclusion is stated in general terms, every case is fact-specific. Importantly, the *Berkson* court pointed out that the provisions at issue – venue, arbitration, and automatic payment renewal – were either buried in the terms or not present at the time the named plaintiffs registered (importantly, the arbitration provision was not then in effect). *Id*. at *6-8. That is the not the case with the provision FanDuel seeks to enforce here – users are notified of the arbitration provision through the all-caps "IMPORTANT NOTICE" at the very top of the Terms. And the Terms are easily accessible though the hyperlink provided during registration and on every page of the website. This court should find the arbitration provision enforceable under the weight of authority cited herein.

## III. CONCLUSION

Given the unambiguous and unavoidable admonition of the binding nature of the Terms, the accessibility of the Terms through the hyperlink accompanying that admonition, and the clear notice of the arbitration provision in the Terms, the Court

///

///

///

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

should enforce the parties' agreement and compel Plaintiff to arbitrate his claims.

**ZWILLGEN LAW LLP**

Dated: June 18, 2015

By: /s/ Katherine M. Robison

Katherine M. Robison (SBN 221556)
kat@zwillgen.com
ZWILLGEN LAW LLP
915-2 Battery Street, Suite 3
San Francisco, California 94111
Telephone: (415) 590-2340
Facsimile: (415) 445-0908

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

# CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2015, I authorized the electronic filing of the foregoing documents, **DEFENDANT FANDUEL, INC.'s REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**, with the Clerk of the Court using the CM/ECF system to be served on the parties by electronic transmission.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 18, 2015.

**ZWILLGEN LAW LLP**

By: /s/ Katherine M. Robison
Katherine M. Robison (SBN 221556)
ZWILLGEN LAW LLP
915-2 Battery Street, Suite 3
San Francisco, California 94111
Telephone: (415) 590-2340
Facsimile: (415) 445-0908
kat@zwillgen.com